UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
KEITH MCBRIDE,

                      Petitioner,

        -against-

ADA PEREZ, Superintendent,

                      Respondent.
------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

13 Civ. 4792 (VB)(PED)

TO THE HONORABLE VINCENT L. BRICCETTI, United States District Judge:

# I.  INTRODUCTION

By Westchester County Indictment Number 08-1597, petitioner was charged with three counts of second degree burglary (N.Y. Penal Law § 140.25), one count of fourth degree criminal possession of stolen property (N.Y. Penal Law § 165.45), four counts of fifth degree criminal possession of stolen property (N.Y. Penal Law § 165.40), two counts of fourth degree criminal mischief (N.Y. Penal Law § 145.00), two counts of petit larceny (N.Y. Penal Law § 155.25) and one count of attempted petit larceny (N.Y. Penal Law §§ 110/155.25).  On March 1, 2010, petitioner pled guilty to three counts of second degree burglary in full satisfaction of the indictment.  He was sentenced on July 27, 2010, in accordance with his plea agreement, to three concurrent, determinate terms of imprisonment of thirteen years followed by five years of post-release supervision ("PRS").  Petitioner is currently incarcerated at Downstate Correctional Facility in Fishkill, New York.

Presently before this Court is petitioner's *pro se* Petition for a Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254.  This petition is before me pursuant to an Order of Reference

dated July 22, 2013 (Dkt. #5).  For the reasons set forth below, I respectfully recommend that

Your Honor deny the petition in its entirety.

## II. BACKGROUND[1]

A. Petitioner's Guilty Plea

On March 1, 2010, petitioner appeared with assigned counsel (David L. Rich) for a

pretrial hearing on various evidentiary issues.  Exh. 1, at 2-4.[2]  Immediately after the

prosecution's first witness was sworn, defense counsel asked to approach the bench.  Id. at 9.

Defense counsel stated "we could probably have a disposition this morning" if the prosecution

would "consider resurrecting" the plea offer that had been recently withdrawn (twelve years plus

five years PRS in exchange for a guilty plea to count 1).  Id. at 5-6, 9-10.[3]  The prosecutor

(Kerrie Williams) declined; defense counsel asked whether he could speak to the prosecutor's

supervisor.  Id. at 10.  The court second-called the case to allow defense counsel time to do so.

Id.

---

[1] Unless otherwise indicated, the information within this section is gleaned from the instant petition (Dkt. #1), petitioner's Brief in Support of Petition for Writ of Habeas Corpus ("Pet. Brief") (Dkt. #2), respondent's Affidavit in Opposition to Petition for Writ of Habeas Corpus (Dkt. #7), respondent's Memorandum of Law ("Resp. Mem.") (Dkt. #8) and petitioner's Reply to Respondent's Memorandum of Law ("Reply") (Dkt. # 9).

[2] Mr. Rich was petitioner's second assigned counsel.  Petitioner's original counsel (Legal Aid Society of Westchester County) filed an omnibus motion, which was initially summarily denied.  Mr. Rich successfully sought reargument and obtained pretrial hearings.

[3] The People conveyed that plea offer to petitioner's original counsel on February 11, 2009.  On February 26, 2009, petitioner was present in court (with his original counsel) when the offer was rejected.  Approximately one year later, on February 18, 2010, petitioner was present in court with Mr. Rich when he rejected the offer again.  At that point, the prosecution formally withdrew the plea offer.

When the hearing resumed, the following occurred (id. at 11-12):

THE COURT: Are we all set?

MS. WILLIAMS: Yes.

MR. RICH: Yes Judge, we have a disposition.  Thank you for giving me the time, I appreciate it.

THE COURT: Fine.  Are we all set to go everybody?

MS. WILLIAMS: Yes, Judge.

THE COURT: Miss Williams, Mr. McBride, you're all set?

THE DEFENDANT: Yes your Honor thank you.

THE COURT: Let's proceed Miss Williams.

MS. WILLIAMS: Judge, after conference with our superiors, the offer as of today is thirteen years with the defendant having to plead to count 1, count 4 and count 8, three counts of burglary second degree.  A restitution judgment order has been discussed in the amount of over $10,000 to be paid to the insurance company as well as Orders of Protection for the victims of the burglaries.

THE COURT:  It's five years post-release on each?

MS. WILLIAMS:  Yes Judge.

THE COURT:  This is to run concurrent?

MS. WILLIAMS:  Yes Judge.

THE COURT:  How much is the exact amount of the restitution please?

MR. RICH:  $10,199.81.

THE COURT:  Make sure you look at the documentation in support of that Mr. Rich.

MR. RICH:  I will your Honor.

THE COURT:  Before sentence.  If you need to go to the jail to go over it with him please do so.  Plus there are surcharges and a DNA fee here, Mr. Rich.

MR. RICH:  Judge, based on the People's application and discussion with Mr. McBride, with respect to indictment 1597 of 08, I've been authorized to withdraw all previously entered pleas of not guilty and enter guilty pleas to counts 1, 4 and 8; all counts being burglary second degree; those pleas being entered in full satisfaction of this indictment, also being entered based on your Honor's sentencing indication as previously set forth.

Petitioner was placed under oath, and allocuted as follows (id. at 13-21):

Q.  Mr. McBride, did you hear your attorney's application to the Court?

A.  Yes ma'am.

Q.  Is this also your application?

A.  Yes ma'am.

Q.  What is your [date] of birth?

A.  10/7/63.

Q.  Do you understand you have an absolute right to remain silent in the face of the charges against you and by entering a plea of guilty today you're giving up that right and incriminating yourself?

A.  Yes.

Q.  Have you had sufficient time to discuss this matter with your attorney and make the decision to plead guilty?

A.  Yes.

Q.  Are you satisfied with the representation given to you by your attorney?

A.  At this point, yes.

Q.  Have you consumed any alcoholic beverages, medication or any other drugs today which could impair your understanding of the proceedings today?

A.  None whatsoever.

Q.  Do you understand that with respect to those charges, that you have the right to a jury trial or to a non-jury trial with the Court sitting as the trier of fact?

A.  Yes I do.

-4-

Q.  Do you understand at such a trial the People would have to prove every element of a crime beyond a reasonable doubt to secure a conviction of that crime?

A.  Yes.

Q.  Do you understand at such a trial you would have the right to confront and cross-examine the People's witnesses?

A.  Yes.

Q.  Do you understand at such a trial you would have the right to present witnesses and testify on your own behalf?

A.  Yes.

Q.  Do you understand by your plea of guilty you waive these and other constitutional rights?

A.  Yes.

Q.  Do you understand your plea of guilty is a conviction just as if you would have gone to trial and been found guilty of three counts of burglary second degree?

A.  Yes.

Q.  Has anyone threatened you, coerced you or forced you in [any way] to plead guilty?

A.  None whatsoever.

Q.  Are you entering this plea freely and voluntarily?

A.  Yes.

Q.  Are you pleading guilty because you are in fact guilty, sir?

A.  Yes.

Q.  Do you understand [you're] pleading guilty at this point to a class C violent felony for which the maximum sentence is fifteen years incarceration?

A.  Yes.

Q.  Do you understand if you're again convicted of a felony, your conviction today may subject you to a greater sentence than if you had not been convicted?

A.  Yes.

Q.  Do you understand with this being your second violent felony offense, you will be classified a second violent felony offender?

A.  Yes.

Q.  Do you understand you will be required to pay restitution in the amount of $10,199.81 to the insurance company in this case as a condition of the plea bargain?

A.  Yes.

Q.  Do you now waive your right to a hearing on the amount of restitution that has been agreed upon?

A.  I do.

Q.  The court has had a conference with the People and your counsel.  Do you have any questions?

A.  None.

MS. WILLIAMS:  Does the Court wish to place anything else on the record?

THE COURT:  You understand the sentence in this case Mr. McBride?

THE DEFENDANT:  Yes I do.

Q.  Mr. McBride, do you also understand although you may be receiving a concurrent sentence to an unrelated conviction, this plea of guilty is an independent conviction and will not be affected should the other conviction be vacated?

A.  Yes.

Q.  Other than the sentence commitment which the court has indicated, has anyone made any other promises or representations to you with respect to this plea of guilty?

A.  None.

. . .

Q. Mr. McBride, do you hereby admit that on or about September 22 of 1995 after a verdict at a bench trial, you were found guilty of the crime of burglary in the second degree as a class C felony and thereafter sentenced on September 22 of 1995 to five to ten years state prison?

A. For the record just a correction, yes, but it was a jury trial.

Q. That was in the Westchester County Court, sir?

A. That is correct.

Q. That was you?

A. Yes.

Q. Mr. McBride, do you understand as a condition of your plea, you're waiving the right to appeal your conviction and sentence to the Appellate Division Second Department?

A. Yes.

Q. Have you discussed this waiver of the right to appeal with your attorney?

A. Yes.

Q. In consideration of this negotiated plea do you now voluntarily waive your right to appeal your conviction and sentence under indictment 08-1597?

A. Yes I do.

. . .

Q. Mr. McBride, do you now plead guilty under indictment 08-1597 to count 1, count 4, and count 8 of the indictment which charges you with burglary in the second degree as a class C violent felony?

A. Yes I do.

Q. First and foremost under count 1, do you admit that on or about August 29th, 2008 between the approximate hours of 8:30 and 9:30 p.m. in the vicinity of 10 Bradford Avenue within the City of Rye, County of Westchester, State of New York, you did knowingly enter unlawfully in the above named dwelling with the intent to commit a crime therein, as you attempted to steal property?

A.  I plead guilty to those charges, correct.

Q.  With respect to count 4, do you hereby admit that on or about September 15th of 2008 between approximate hours of 6:00 and 9:00 p.m. in the vicinity of 27 Doris Road in the town of Mamaroneck, County of Westchester, State of New York, you did knowingly enter unlawfully in the above referenced dwelling with the intent to commit a crime therein, namely a larceny?

A.  I plead guilty to those charges as well.

Q.  With respect to count 8, do you hereby admit that on or about September 19th of 2008 between the approximate hours of 6:45 p.m. and 9:40 p.m. in the vicinity of 5 Durham Road, town of Mamaroneck, County of Westchester, State of New York, you did knowingly enter unlawfully in the above referenced dwelling with intent to commit a crime therein, namely a larceny?

A.  I plead guilty to the third and final one as well.

Q.  Do you understand everything that's been said here today, sir?

A.  Yes ma'am.

MS. WILLIAMS:  Your Honor with the defendant's plea of guilty to the three counts of burglary under counts 1, 4 and 8 under indictment 08-1597 based on the plea allocution and defendant's demeanor therein, People recommend acceptance of this plea.

THE COURT:  Anything else you would like to ask, Mr. McBride?

THE DEFENDANT:  Ask, no.  State, yes.

THE COURT:  Well, at the time of sentence you'll be given an opportunity to state something.  Is that acceptable to you?

THE DEFENDANT:  More than.

THE COURT:  Court accepts the plea, find [sic] it's knowingly, voluntarily and intelligently entered.  [Sentencing set for May 11th.]⁴  Defendant

---

[4]  Prior to his sentencing, petitioner sought to withdraw his guilty plea on the ground that it was involuntary and induced by counsel's lack of preparation for trial and, thus, his ineffectiveness.  On July 13, 2010, the court relieved Mr. Rich, appointed new counsel and adjourned sentencing until July 24, 2010.  Following another brief adjournment (for reasons which do not appear on the record), petitioner appeared with new counsel for sentencing on July

remanded.

B. Direct Appeal

On or about August 23, 2010, petitioner timely filed a notice of appeal.  On or about
March 29, 2012, petitioner (by and through counsel) appealed the judgment of conviction to the
Appellate Division, Second Department, on the following grounds:  (1) the trial court erred by
summarily denying petitioner's motion to withdraw his guilty plea without an evidentiary
hearing; and (2) counsel's ineffectiveness deprived petitioner of a more favorable plea offer
(twelve years instead of thirteen).  See Resp. Mem., Exh. 5.[5]  Petitioner then sought and received
leave to file a supplemental brief, wherein he argued that the plea proceeding violated his due
process rights because he did not specifically allocute to the PRS component of his sentence.
See Pet. Brief, Exh. A.  On February 27, 2013, the Appellate Division affirmed petitioner's
judgment of conviction.  People v. McBride, 103 A.D.3d 920, 959 N.Y.S.2d 671 (2d Dep't
2013).

Petitioner, by and through counsel, timely submitted an application for leave to appeal to
the New York Court of Appeals, wherein he sought review of all of the claims raised in
counsel's appellate brief.  See Exh. 8.  On or about March 14, 2013, petitioner submitted a pro se
addendum to his leave application, wherein he sought leave to appeal the Second Department's
denial of the claim he raised in his supplemental brief–i.e. that his plea was not knowing,
voluntary and intelligent because he did not specifically allocute to the PRS component of his

_____

27, 2010.  At that proceeding, the court addressed–and rejected–petitioner's motion to withdraw
his guilty plea, then sentenced him in accordance with his plea agreement.  The ground upon
which petitioner sought to withdraw his guilty plea is not germane to the instant petition.

[5]  Hereinafter, all citations to "Exh. ___" refer to exhibits attached to respondent's
Memorandum of Law.

sentence.  See Pet. Brief, Exh. C.  On or about May 3, 2013, petitioner submitted a reply in

further support of his addendum leave application.  See id., Exh. B.  The Court of Appeals

denied petitioner leave to appeal on June 11, 2013.  People v. McBride, 21 N.Y.3d 1006, 993

N.E.2d 1281, 971 N.Y.S.2d 258 (2013) (Table).  Petitioner did not seek a writ of *certiorari* to the

United States Supreme Court.

C.  The Instant Habeas Petition

     Petitioner timely[6] filed the instant Petition for a Writ of Habeas Corpus on or about June

25, 2013,[7] wherein he seeks habeas review of the claim he raised in his *pro se* supplemental brief

to the Second Department and in his addendum leave application to the New York Court of

Appeals.  Specifically, petitioner argues that habeas relief is warranted due to the trial court's

failure to secure his allocution to the PRS component of his sentence which, according to

petitioner, vitiated the knowing and voluntary nature of his plea and, thus, deprived him of due

process.  See Petition at 3.[8]

### III.  APPLICABLE LAW

     "Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may

review the merits of a state criminal judgment in a habeas corpus action, the court must first

---

   [6]  See 28 U.S.C. § 2244(d)(1).

   [7]  The date on which petitioner placed the instant Petition in the prison mailing system.
See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (extending the "mailbox rule," Houston v.
Lack, 487 U.S. 266 (1988), to *pro se* petitions for habeas relief).

   [8]  Petitioner affirmatively states that he has abandoned all other claims he asserted on
direct appeal:  "Although other claims purported on direct appeal has [sic] been exhausted, the
petitioner has forfeited the additional claims, and only offer[s] this claim for Habeas Corpus
rel[ie]f."  Petition at 4.

determine whether the petitioner has complied with the procedural requirements set forth in 28

U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

accordance with  § 2254(d).  The procedural and substantive standards applicable to habeas

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), are summarized below.

A.  Timeliness

The AEDPA established a one-year statute of limitations for the filing of a habeas corpus

petition seeking relief from a state court conviction.  See 28 U.S.C. § 2244(d)(1).  The one-year

limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by
> State action in violation of the Constitution or laws of the United States is
> removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly recognized by the
> Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due diligence.

Id.

The AEDPA's statute of limitations is tolled during the pendency of a properly filed

application for state post-conviction relief, or other collateral review, of a claim raised in the

petition.  See id. § 2244(d)(2).  The one-year limitation period is also subject to equitable tolling,

which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights

diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely

filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011). "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline." Id. Additionally, "[c]onsistent with the maxim that equity aids the vigilant, a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that he acted with reasonable diligence throughout the period he seeks to toll." Id. at 138 (internal quotation marks and citations omitted); see also Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (A petitioner seeking equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.").

B. Procedural Default

Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or that he is actually innocent. See Bousley, 523 U.S. at 622; Coleman v. Thompson, 501 U.S. 722, 750 (1991). See also Lee v. Kemna, 534 U.S. 362, 375 (2002); Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002). A procedural ground is "independent" if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." See Harris,

-12-

489 U.S. at 263 (internal quotation marks omitted).  A procedural bar is "adequate" if it is "based on a rule that is firmly established and regularly followed by the state in question." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted).

In certain limited circumstances, however, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'"  See Garvey v. Duncan, 485 F.3d 709, 713-14 (2d Cir. 2007) (citing Lee, 534 U.S. at 376).  To this end, the Second Circuit has set forth the following "guideposts" for evaluating the adequacy of the state procedural bar in the context of  "the specific circumstances presented in the case, an inquiry that includes an evaluation of the

> asserted state interest in applying the procedural rule in such circumstances": (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 381-85).

C.  Exhaustion

A federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be

-13-

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims. Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). In doing so, a petitioner need not cite chapter and verse of the Constitution; there are a number of other ways in which a petitioner may fairly apprise the state court of the constitutional nature of his claim, including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011). A habeas petitioner who fails to meet a

state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal habeas court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

When confronted with a "mixed" petition containing both exhausted and unexhausted claims, a federal court has the following options: (1) it may stay the proceedings and hold the petition in abeyance in order to permit the petitioner to return to state court and exhaust the unexhausted claim(s); (2) it may permit the petitioner to amend the petition and excise any unexhausted claim; (3) it may dismiss without prejudice the entire petition; or (4) it may review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." See 28 U.S.C. § 2254(b)(2); Rhines v. Weber, 544 U.S. 269, 277-78 (2005); Zarvela v. Artuz, 254 F.3d 374, 378-82 (2d Cir. 2001); Reyes v. Morrissey, No. 07 Civ. 2539, 2010 WL 2034531, at *9 (S.D.N.Y. Apr. 21, 2010) (Report and

Recommendation), *adopted by* 2010 WL 2034527 (S.D.N.Y. May 19, 2010).[9]

D.  Standard of Review

 "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  See 28 U.S.C. § 2254(a).  When reviewing petitions filed subsequent to the AEDPA's effective date, a federal court may not grant habeas relief unless the petitioner establishes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (d)(2).  The AEDPA deferential standard of review will be triggered if the petitioner's claim "was adjudicated on the merits in State court proceedings."  28 U.S.C. § 2254(d); see Bell v. Miller, 500 F.3d 149, 154-55 (2d Cir. 2007).  "For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment."  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

 A state court's decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth [by the Supreme Court of the United States]" or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  "Clearly

  [9]  Copies of all unpublished cases available only in electronic form cited herein have been mailed to petitioner.  See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [Supreme Court] decisions.  And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even 'clear error' will not suffice."  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  "The critical point is that relief is available under § 2254(d)(1)'s unreasonable application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  Id. at 1706-07 (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

Finally, under the AEDPA, the factual findings of state courts are presumed to be correct.  See 28 U.S.C. §2254(e)(1); see also Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence."  28 U.S.C. §2254(e)(1).

## IV. ANALYSIS

Petitioner claims his guilty plea was not knowing and voluntary because the trial court failed to secure his allocution to the PRS component of his sentence.  Petitioner exhausted this claim on direct appeal; the Appellate Division summarily denied relief.  People v. McBride, 103 A.D.3d 920, 921, 959 N.Y.S.2d 671 (holding "[t]he defendant's remaining contentions, including those raised in his pro se supplemental brief, are without merit").  The Appellate Division's "summary disposition constitutes a disposition 'on the merits.'"  Hawthorne v. Schneiderman, 695 F.3d 192, 196 (2d Cir. 2012) (citing Harrington v. Richter, 131 S. Ct. at 784-85).  Because

-17-

the Appellate Division's written decision represents the last-reasoned state court decision to

address petitioner's due process claim, I must review that claim in accordance with the

deferential AEDPA review standard.  See id.

Petitioner contends he is entitled to habeas relief because:

At bar, during the pre-allocution, after the prosecutor outlined the
negotiated [sic] elements of the plea–without any mention of post-release
supervision, the trial court asked "It's five years post-release on each?" to which
the prosecutor replied "yes" as if an afterthought.
This single sentence question and one word answer between the court and
prosecutor did little to assure that the defendant was aware that his plea would
include a period of post-release supervision.  Put another way, just because the
defendant was present does not necessarily mean that the defendant heard or
acknowledged the question presented by the court or the answer given by the
prosecutor, regarding post-release supervision.

Reply at 3.  In support of his argument, petitioner relies primarily upon People v. Catu, 4 N.Y.3d

242, 825 N.E.2d 1081, 792 N.Y.S.2d 887 (2005), wherein the New York Court of Appeals held

that a trial court's failure to advise a defendant who is pleading guilty to a determinate sentence

about the PRS component of his sentence renders the plea involuntary and requires vacatur of

the plea.  See Pet. Brief at 6-13; Reply at 2-4.  Petitioner avers that Catu stands for the

proposition "that as a matter of due process, the record must affirm that the defendant

knowingly, intelligently, and voluntarily accepted post-release supervision as a part of his plea;

and the only way to accomplish that goal is to allocute the post-release supervision component."

Reply at 3.  In other words, petitioner argues that the trial court's inquiry as to the PRS

component was, by itself, insufficient to satisfy due process absent petitioner's acknowledgment

that his sentence contained a term of PRS.

Petitioner accurately recounts the extent to which, during his plea allocution, the trial

court addressed the PRS component his sentence.  See Exh. 1 at 11-12.  I agree with petitioner

-18-

that the trial court's oblique colloquy with the prosecution (consisting only of a shorthand reference to PRS) did not satisfy its obligation–under *Catu* and its progeny–to ensure petitioner understood his sentence would include a five-year term of PRS.  Nonetheless, this Court cannot grant habeas relief based upon a state court's unreasonable application of *state* law; the question is whether the Appellate Division's decision was contrary to, or an unreasonable application of, clearly established *Supreme Court* precedent.

The Supreme Court's "longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (internal quotation marks and citations omitted).  "A plea of guilty is considered voluntary and intelligent if the defendant enters the plea with full awareness of its 'direct consequences.'" Wilson v. McGinnis, 413 F.3d 196, 198-99 (2d Cir. 2005) (quoting Brady v. United States, 397 U.S. 742, 755 (1970)). "However, the Supreme Court has not established that the imposition of a term of supervised release is a 'direct consequence' of which a defendant must be advised prior to his plea." Lue v. Marshall, No. 08 Civ. 3834, 2014 WL 787327, at *16 (S.D.N.Y. Feb. 24, 2014).  See Pignataro v. Poole, 381 F.App'x 46, 50 (2d Cir. 2010) (noting absence of a Supreme Court ruling "on the issue of whether PRS (or a similarly state-imposed post-imprisonment term of supervision, such as parole) could be a direct consequence of a guilty plea").  Consequently, petitioner cannot demonstrate that the Appellate Division's denial of his due process claim was contrary to, or an unreasonable application of, clearly established federal law. See Wright v. Van Patten, 552 U.S. 120, 126 (2008) ("Because [Supreme Court] cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law.") (internal quotations, citations and alterations omitted);

Pignataro, 381 F.App'x at 49 ("There can be no unreasonable application of clearly established federal law as determined by the Supreme Court where there is an absence of a decision on the issue by the Supreme Court.").  See also Rosario v. Laffin, No. 13-CV-00181, 2014 WL 2600169, at *12-13 (E.D.N.Y. June 11, 2014); Davis v. New York, No. 10-CV-615, 2013 WL 789194, at *5-6 (E.D.N.Y. Mar. 4, 2013); Redcross v. Keller, No. 06 Civ. 3882, 2010 WL 3219320, at *5-7 (S.D.N.Y. Aug. 12, 2010).  Accordingly, I conclude and respectfully recommend that petitioner's due process claim does not warrant habeas relief.

## IV. CONCLUSION

For the reasons set forth above, I conclude—and respectfully recommend that Your Honor should conclude—that the instant petition for a writ of habeas corpus should be denied in its entirety.  Further, because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).


Dated:   June 25, 2015
        White Plains, New York

Respectfully Submitted,

_____

PAUL E. DAVISON, U.S.M.J.


## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file

written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with

any responses to the objections, shall be filed with the Clerk of the Court with extra copies

delivered to the chambers of the Hon. Vincent L. Briccetti, at the Hon. Charles L. Brieant, Jr.

Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York

10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County,

517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to Judge Briccetti.

A copy of this Report and Recommendation has been mailed to:

Keith McBride, DIN# 10-A-4432
Downstate Correctional Facility
Red Schoolhouse Road, Box F
Fishkill, N.Y. 12524